1   NOSSAMAN LLP
    Steven E. Knott, State Bar No.150881
2   sknott@nossaman.com
    Jennifer L. Meeker, State Bar No. 260138
3   jmeeker@nossaman.com
    777 S. Figueroa Street, 34th Floor
4   Los Angeles, CA 90017
    Telephone: 213.612.7800
5   Facsimile: 213.612.7801

6   Tyler H. Lester, Attorney at Law, PC
    Tyler H. Lester, State Bar No. 275950
7   tlester@tylerlesterlaw.com
    1233 W. Shaw Suite 106
8   Fresno, CA 93711
    Telephone: 559.432.5977
9   Facsimile: 559.227.3600

10  **Attorneys for Plaintiffs,**
    Robert Comstock and Tamarack Biotics Pte Ltd

11

12                  UNITED STATES DISTRICT COURT

13             FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15

16  ROBERT COMSTOCK, an individual;        )   Case No.
    TAMARACK BIOTICS PTE LTD,              )
17  a Singaporean corporation,             )
                                           )
18              Plaintiff,                 )   **COMPLAINT; DEMAND FOR JURY TRIAL**
                                           )
19          vs.                            )
                                           )
20  INTERTEK HEALTH SCIENCES INC. D/B/A    )
    INTERTEK SCIENTIFIC & REGULATORY       )
21  CONSULTANTS, a Canadian corporation,   )
                                           )
22              Defendant.                 )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25                                         )
                                           )
26                                         )
                                           )
27                                         )
                                           )
28  _____)

9037349.v1

Plaintiffs Robert Comstock and Tamarack Biotics Pte Ltd ("Tamarack") (Collectively, "Plaintiffs") allege as follows:

## Parties

1.      Plaintiff Robert Comstock is an individual who resides in Fresno, California. Mr. Comstock is the founder, owner and president of Plaintiff Tamarack.

2.      Plaintiff Tamarack is, and at all times material to this complaint was, a corporation formed under the laws of Singapore with its principal place of business in Fresno, California.

3.      Based on information and belief, Defendant Intertek Health Sciences Inc. d/b/a Intertek Scientific & Regulatory Consultants ("Defendants" or "Intertek") is, and at all times material to this complaint was, a corporation formed under the laws of Canada with its principal place of business in Ontario, Canada.  Dr. Ashley Roberts, Ph.D. is Intertek's Senior Vice President, Food & Nutrition Group, Intertek Scientific and Regulatory Consultancy.

## Jurisdiction and Venue

4.      The matter in controversy exceeds the sum of US$75,000.  Plaintiffs are not citizens of the same state as Defendant, and accordingly jurisdiction exists for this matter under 28 U.S.C. § 1332(a).

5.      Venue is proper under 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to the claims alleged below, which are the subject of this action, took place in this judicial district.

## Background Facts and General Allegations

6.      Commencing in or around July, 2013, Mr. Comstock consulted with Dr. Roberts regarding all necessary licenses and approvals for the sale throughout the United States of America of a powdered raw milk product that Plaintiffs were developing known as SupplaMilk ("SupplaMilk" has also been referred to from time to time as "Aller-X." Any reference to SupplaMilk shall also refer to Aller-X and vice versa.)

7.      In late 2013, Plaintiffs associated with the E&J Gallo Winery to produce SupplaMilk at its facility located in Fresno, California. The company designated to supply the raw milk was Organic Pastures, also located in Fresno, California.

9037349.v1

8.      Mr. Comstock informed Dr. Roberts that Plaintiffs intended to launch SupplaMilk, which is a new health supplement that would contain low temperature dried raw milk in a powdered form. The advice that Intertek and Dr. Roberts provided was completely wrong, as will be discussed below, and fell below the standard of care required of a consultant who holds himself out to the public as having expertise in a particular area. Plaintiffs relied on Dr. Robert's advice to their financial detriment in the amount of US$424,454.

9.      Plaintiffs relied on representations by Intertek and Dr. Roberts, including that Intertek is a "one stop shop" for all food services designed to "establish a trusted partnership with your business, consistently adding value and increasing your competitive advantage in the industry." In addition, Plaintiffs relied on Intertek's representations that it offers global regulatory and scientific expertise for a wide range of food and supplement products worldwide. Intertek states on its website it can help navigate the development and placement of a product into the marketplace with its team of professionals, and "we provide the most expedient and cost effective route to satisfy worldwide scientific and regulatory approval requirements." Intertek further states that whether it is a food ingredient, a nutritional supplement, natural health product, or a food derived from biotechnology, Intertek's toxicologists and scientists can help navigate the scientific and regulatory requirements that the products must meet to be marketed.

10.     Mr. Comstock advised Dr. Roberts he was spending considerable money on the project and he wanted to ensure that he was not wasting his money. He specifically asked whether he would be able to sell the product produced from dried raw milk, which is dried milk that has not been pasteurized. Dr. Roberts contracted with Plaintiffs knowing they were in California. The contract was formed through a series of emails and an in-person meeting that took place in Las Vegas, Nevada.

11.     As of November 28, 2013, Dr. Roberts stated that if it could be shown that the proposed product is free of pathogens or at least in the same ballpark as other foods and ingredients, then, as Dr. Roberts stated, "I can see no impediment to you selling the product." Dr. Roberts stated that Intertek was looking into the regulatory components of selling raw milk as a supplement. He specifically stated that he had looked into the United States Code of Federal Regulations (C.F.R.).

COMPLAINT; DEMAND FOR JURY TRIAL

9037349.v1

12.   In November, 2013, Mr. Comstock reminded Dr. Roberts that Plaintiffs were investing a large amount of money to launch the product.

13.   Still, Dr. Roberts mentioned nothing about federal regulations that would restrict the sale of dried raw milk as a dietary supplement over state lines. Dr. Roberts explained that Plaintiffs would need to show that the product did not have pathogens, and as will be discussed in further detail herein below, Dr. Roberts induced Plaintiffs to spend additional money to get a safety opinion, which he offered to organize for them, to determine if that raw dried milk was free of pathogens or at least in the same ballpark as other foods and ingredients. He stated that with a group of experts reviewing the information, he could determine that the product was pathogen free and stated "this I believe would then be sufficient for you to start selling your product." Dr. Roberts billed Plaintiffs US$4,708 for this faulty advice, and Mr. Comstock paid the bills. By January 20, 2014, microbial testing was underway.

14.   In February, 2014, Plaintiffs asked Mr. Roberts for a formal letter acknowledging that if the pathogen testing demonstrates no pathogens, then the product could be sold as a dietary supplement in the United States. On March 10, 2014, Dr. Roberts stated that if the product contained no claims it had allergen fighting compounds "you will be okay."

15.   Mr. Comstock, in reliance on these representations from Intertek, moved from his home in Santa Cruz, California and purchased a home in Fresno so he could be close to the raw milk dairy. Dr. Roberts knew that Mr. Comstock had moved to Fresno to continue to develop Aller-X. This move was made with the understanding that raw powdered milk could be sold in the United States if it was free of pathogens or at least in the same ballpark as other foods and ingredients.

16.   In April, 2014, Dr. Roberts made further recommendations regarding the sale of the raw milk product in the United States, regarding the name, claims regarding dietary supplements, language used within advertising, a possible allergen warning, and some information regarding a website and notification to the FDA. There was still no mention of any restrictions on the sale of raw dried milk products across state lines when used in a dietary supplement .

17.   In June, 2014, Mr. Comstock advised Dr. Roberts he was considering bringing a joint venture partner in to capitalize on the powdered raw milk opportunity. He asked Dr. Roberts for a letter confirming that he can sell the product following the pathogen testing that Dr. Roberts had described.

1  On June 6, 2014, Dr. Roberts advised Mr. Comstock he would prepare a letter  as requested by Mr.

2  Comstock.

3       18.      On June 16, 2014, a full eleven months after their first conversation, Dr. Roberts for the

4  first time disclosed that there is a regulation that calls for the mandatory pasteurization of all milk and

5  milk products.  Dr. Roberts added that, "this unfortunately will prevent you from selling your product as

6  a dietary supplement across state borders." Dr. Roberts closed the email with, "I apologize for not

7  picking this up sooner but [sic] occurs in a very obscure part of the regulations which was not picked up

8  on our search."

9       19.      Intertek is a company engaged in the business of supplying key expert information. It is

10  evident from the communications between Mr. Comstock and Dr. Roberts that Plaintiffs relied on the

11  false statements they could sell the product. These statements from Dr. Roberts substantially influenced

12  Plaintiffs to expend the significant amounts of money, in reliance on Defendant's representations and

13  professional advice.  Plaintiffs repeatedly told Dr. Roberts that Plaintiffs were spending substantial sums

14  of money in reliance on the representations that Plaintiffs could sell the product in the United States.

15  Plaintiffs have been damaged in the amount of US$424,454 by the professional negligence and

16  negligent misrepresentations made by Intertek's Senior Vice President of the Food & Nutrition Group of

17  the Intertek Scientific & Regulatory Consultancy.  Mr. Comstock would not have expended these

18  amounts without the false statement.

19       20.      At all times material, Intertek employed Dr. Roberts.  Dr. Roberts was under Intertek's

20  direct supervision, employ, and control when he committed the wrongful and negligent acts described

21  herein. Dr. Roberts engaged in this conduct while acting in the course and scope of his employment

22  with Intertek. Accordingly, Intertek is liable for the negligent and wrongful conduct of Dr. Roberts

23  under the law of vicarious liability, including the doctrine of respondeat superior.

24       21.      Under the foregoing circumstances, Intertek is liable to Plaintiffs for damages in excess

25  of US$424,454.

26  ///

27  ///

28  ///

COMPLAINT; DEMAND FOR JURY TRIAL

9037349.v1

### First Claim For Relief

### (Professional Negligence)

22.     Plaintiffs allege and incorporate by reference paragraphs 1 through 21, inclusive, of this complaint as though fully set forth herein.

23.     On or about July, 2013, and continuing through all times herein mentioned, Plaintiffs engaged Intertek, through Dr. Roberts, to provide professional services to determine whether Plaintiffs would be able to sell the SupplaMilk, and Intertek, though Dr. Roberts, actually provided professional services relating to SupplaMilk to plaintiffs.

24.     At all times during the existence of the above-alleged engagement of Intertek, Plaintiffs relied completely on Intertek to provide professional services to determine whether Plaintiffs would be able to sell SupplaMilk, as well as on the general professional skill and ability of said Intertek as a consulting firm engaged in the business of supplying key expert information with expertise in regulatory strategies for food products, pharmaceuticals, medical devices, and products of biotechnology, agricultural and industrial chemicals.

25.     Intertek, through Dr. Roberts, negligently, carelessly, and recklessly rendered services as a consulting firm engaged in the business of supplying key expert information with expertise in regulatory strategies for food products, pharmaceuticals, medical devices, and products of biotechnology, agricultural and industrial chemicals. The negligence and breaches of duty by Intertek include, but are not limited to:

        a.   Failed to exercise reasonable care in representing that Plaintiffs could sell SupplaMilk so long as the proposed product is free of pathogens or at least in the same ballpark as other foods and ingredients;

        b.   Failed to competently investigate and research all applicable regulations relevant to whether Plaintiffs could sell SupplaMilk in a thorough, effective, timely and efficient manner; and

        c.   Failed to identify and disclose that there is a regulation that calls for the mandatory pasteurization of all milk and milk products that prevents Plaintiffs from selling SupplaMilk until after Mr. Comstock had already substantially invested in developing SupplaMilk.

26.     Intertek, through Dr. Roberts, owed Plaintiffs the obligation to exercise the degree of

COMPLAINT; DEMAND FOR JURY TRIAL

9037349.v1

1  care, skill and diligence that ordinarily prudent persons in like position would use under similar

2  circumstances in the business of supplying key expert information with expertise in regulatory strategies

3  for food products, pharmaceuticals, medical devices, and products of biotechnology, agricultural and

4  industrial chemicals.

5        27.    By Dr. Robert's actions and inactions, as generally and specifically described above,

6  Intertek failed and neglected to perform its duties to Plaintiffs properly.

7        28.    As a direct and proximate result of the negligence of Intertek, Plaintiffs have suffered

8  losses and other compensatory and consequential damages, all in an amount in excess of US$424,454.

9  When these sums have been ascertained, Plaintiffs will amend this complaint accordingly, or according

10 to proof at the time of trial.

11                       **Second Claim For Relief**

12                       **(Negligent Misrepresentation)**

13       29.    Plaintiffs allege and incorporate by reference paragraphs 1 through 28, inclusive, of this

14 complaint as though fully set forth herein.

15       30.    Plaintiffs allege that each of the representations described above were false or misleading

16 when made by Intertek and were made without a reasonable basis for believing it to be true. Intertek is a

17 company engaged in the business of supplying key expert information. Plaintiffs relied on the false

18 statements they could sell SupplaMilk across the United States. These statements from Intertek

19 substantially influenced Plaintiffs to expend the significant amounts both for Mr. Comstock's move to

20 Fresno and getting the business started and retaining Intertek's services. Mr. Comstock repeatedly told

21 Dr. Roberts that Plaintiffs were incurring significant expenses in reliance on the representations he could

22 sell the product. .

23       31.    Had Plaintiffs known of the true facts—that they could not sell SupplaMilk across the

24 United States due to the regulation that calls for the mandatory pasteurization of all milk and milk

25 products, Plaintiffs would not have incurred out-of-pocket expenses in at least US$424,454.

26       32.    Intertek had a duty to disclose the true information on the grounds that the information

27 was material to Plaintiffs' development of an investment in SupplaMilk, including without limitation,

28

COMPLAINT: DEMAND FOR JURY TRIAL

9037349.v1

1  Plaintiffs continued retention of Intertek's services. Defendants' failure to disclose these material facts

2  to Plaintiffs, therefore, constitutes negligent misrepresentation.

3    33.   As a direct and proximate result of the negligent misrepresentations of Intertek, Plaintiffs

4  have suffered losses and other compensatory and consequential damages, all in an amount in excess of

5  US$424,454. When these sums have been ascertained, Plaintiffs will amend this complaint accordingly,

6  or according to proof at the time of trial.

7  **Third Claim For Relief**

8  **(Breach of Contract)**

9    34.   Plaintiffs allege and incorporate by reference paragraphs 1 through 33, inclusive, of this

10  complaint as though fully set forth herein.

11    35.   Intertek, through Dr. Roberts, contracted with Plaintiffs through a series of emails and an

12  in-person meeting that took place in Las Vegas, Nevada to determine whether Plaintiff's would be able

13  to sell the product SupplaMilk, a dietary supplement produced from dried raw milk. Pursuant to that

14  contract, Intertek undertook to provide professional services to Plaintiffs in an effective and efficient

15  manner.

16    36.   Plaintiffs did all, or substantially all, of the significant things that the contract required

17  them to do, including paying Intertek for its rendering of services.

18    37.   Intertek breached its contract by failing to provide the contracted for professional services

19  to Plaintiffs by effectively and in an efficient manner. Plaintiffs contracted with Defendant to, among

20  other things, investigate United States Code of Federal Regulations, as it related to the sale of raw dried

21  milk as a dietary supplement in the United States. Defendant breached the contract by failing to look

22  into these regulations as required under the contract and failed to provide professional advice regarding

23  the same. Specifically, Intertek failed to identify and disclose that there is a regulation that calls for the

24  mandatory pasteurization of all milk and milk products that prevents Plaintiffs from selling SupplaMilk

25  until after Plaintiffs had already substantially invested in developing SupplaMilk, based on Intertek's

26  representations that it could sell SupplaMilk so long as the proposed product is free of pathogens or at

27  least in the same ballpark as other foods and ingredients. As a direct and proximate result of Defendant's

28  breach, Plaintiffs have suffered losses and other compensatory and consequential damages, all in an

COMPLAINT: DEMAND FOR JURY TRIAL

9037349.v1

1  amount in excess of US$424,454.  When these sums have been ascertained, Plaintiffs will amend this

2  complaint accordingly, or according to proof at the time of trial.

3  **PRAYER FOR RELIEF**

4      Wherefore, Plaintiffs pray for relief as follows:

5      1.      For compensatory and consequential damages in an amount in excess of US$424,454 and

6  according to proof;

7      2.      For prejudgment interest, attorneys' fees and costs; and,

8      3.      For such other and further relief as the Court may deem just and proper.

9  DATED:  April 1, 2015                    NOSSAMAN LLP

10

11                                         By: _____

12                                              Jennifer L. Meeker
                                                Attorneys for Plaintiff Steelcase Inc.
13

                       **DEMAND FOR JURY TRIAL**
14

15      Plaintiff hereby demands trial by jury.

16

17  DATED:  April 1, 2015                    NOSSAMAN LLP

18

19                                         By: _____

20                                              Jennifer L. Meeker
                                                Attorneys for Plaintiff Steelcase Inc.
21

22

23

24

25

26

27

28

8
COMPLAINT; DEMAND FOR JURY TRIAL

9037349.v1